In re CAERE CORPORATE SECURITIES LITIGATION.

This Order Relates To All Actions.

No. C–93–20229(A)–SW.

United States District Court, N.D. California.

Nov. 18, 1993.

Steven O. Sidener & Steven M. Sherman, Gold & Bennett, San Francisco, CA, for plaintiffs.

Boris Feldman & Jerome F. Birn, Jr., Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, for defendants.

## ORDER DISMISSING AMENDED COMPLAINT

SPENCER WILLIAMS, Senior District Judge.

Plaintiffs in this action are a class of individuals who purchased the common stock of Caere Corporation (hereafter "Caere"), a publicly-traded manufacturer of information recognition software and systems, between December 8, 1992, and April 5, 1993, (hereafter "the class period"). ¶¶ 3(c), 6–7, 23–24.[1] Defendants are officers and directors of

Caere who sold shares of Caere's common stock during the class period, as well as Caere itself. ¶¶ 7–13.

On July 2, 1993, Plaintiffs filed an Amended Class Action Complaint, alleging that Defendants violated Section 10(b) of the Securities and Exchange Act of 1934 (hereafter "the Exchange Act"), Securities and Exchange Rule 10b–5 (hereafter "Rule 10b–5"),[2] and California law. ¶ 3(a). Plaintiffs' central allegations are that (1) Defendants made misleading statements to the public designed to inflate Caere's share price, ¶¶ 1–2, 17, 33–36, 43–46, 49; (2) Defendants adopted certain overly optimistic statements made by independent stock analysts, and hence the analysts' misleading forecasts should be treated as if they had been made by Defendants themselves, ¶¶ 2, 18–19, 38–42, 48; (3) Defendants failed to disclose certain negative, non-public information about Caere's condition and earnings prospects, ¶¶ 1–2, 19–22; (4) Plaintiffs bought shares of Caere's common stock while the price was inflated, ¶ 6; and (5) Plaintiffs suffered substantial losses when Caere's share price plummeted after the market learned that Caere's business outlook was not as positive as Defendants had portrayed, ¶ 6.

Defendants filed a motion to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) on the grounds that (1) none of Defendants' statements were misleading under Rule 10b–5; (2) Defendants did not adopt the analysts' statements, and hence cannot be held liable for them under Rule 10b–5; (3) Defendants had no duty to disclose negative information about Caere's business prospects under Rule 10b–5; (4) because the federal claims under Rule 10b–5 should be dismissed without leave to amend, the Court should also dismiss the state law claims; (5) in the alternative, re-

---

1. Citations to "¶ ___" refer to the Amended Complaint.

2. Section 10(b) of the Exchange Act provides that
   It shall be unlawful for any person ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules or regulations as the [Securities and Exchange] Commission may prescribe

as necessary or appropriate in the public interest or for the protection of investors.
15 U.S.C. § 78j(b). Rule 10b–5, adopted pursuant to § 10(b) of the Exchange Act, provides that [i]t shall be unlawful ... [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.
17 C.F.R. § 240.10b–5.

garding the state law claims, Plaintiffs failed to adequately plead reliance; and (6) Plaintiffs' state law negligent misrepresentation claim should be dismissed with prejudice, since Defendants' statements cannot give rise to such a claim as a matter of law.

Having carefully reviewed the Amended Complaint, all of the relevant facts and law, the materials submitted by the parties and the arguments of counsel, the Court (1) DISMISSES Plaintiffs' Rule 10b–5 allegations regarding the analysts' forecasts WITH LEAVE TO AMEND; (2) DISMISSES Plaintiffs' remaining Rule 10b–5 claims WITHOUT LEAVE TO AMEND; (3) DISMISSES Plaintiffs' state law negligent misrepresentation claim WITHOUT LEAVE TO AMEND; and (4) DISMISSES Plaintiffs' remaining state law claims WITH LEAVE TO AMEND.

## LEGAL STANDARD

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the district court must assume that all the facts alleged in the complaint are true. *Sun Savings and Loan Ass'n v. Dierdorff,* 825 F.2d 187, 191 (9th Cir.1987). Furthermore, all allegations must be construed in the light most favorable to the plaintiff, and all doubts must be resolved in favor of the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969), *reh'g denied,* 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969). A complaint should not be dismissed without leave to amend under Rule 12(b)(6) unless it appears that the plaintiff would not be entitled to the relief he seeks under any set of facts that could be proved. *Fidelity Financial Corp. v. Fed. Home Loan Bank,* 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987).

## DISCUSSION

A. *None of the Defendants' Statements Were Misleading Under Rule 10b–5*

Plaintiffs contend that Defendants mislead the market by making overly optimistic statements regarding Caere's revenue and earnings prospects for the first quarter of 1993. Specifically, Plaintiffs point to (1) a November 9, 1992, press release and two similar press releases made in December 1992 and January 1993, which announced the introduction of new products, touted them as technological advancements, called Caere a market leader in its field, and quoted Caere's Chief Operating Officer as saying that Caere was "well-positioned" for growth, ¶¶ 34–36, 43–44; (2) a January 25, 1993, press release in which Caere announced its 1992 financial results, stated that 1992 had been an "exciting year," that Caere's revenues and earnings had reached "record levels" in 1992, and that Caere had "expanded beyond [its] traditional markets" in 1992, ¶¶ 45–46; and (3) Caere's 1992 annual report, which announced "continuing strong sales" for 1992, ¶ 50.

According to Plaintiffs, these statements were misleading because Defendants knew that (1) Caere had oversupplied its distributors in 1992, and therefore Caere's first quarter 1993 earnings and revenues would be depressed, since the distributors would be able to fill orders from inventory purchased in 1992 rather than ordering new products from Caere in 1993; (2) product shipments would decline significantly during the first quarter of 1993 because of softening demand for Caere's key products; (3) Caere was offering "incentives" to its distributors that would adversely affect first quarter 1993 earnings; (4) Caere had committed to significant fixed overhead in order to support substantial sales, maintenance and manufacturing operations; (5) Caere's marketing expenditures had increased significantly; and (6) Caere's systems for determining and forecasting its financial performance were inadequate. ¶¶ 1, 55.

Projections and general expressions of optimism can be actionable under Rule 10b–5. *In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1113 (9th Cir.1989), *cert. denied,* 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990). A statement of optimism contains at least three implicit factual assertions: (1) that the statement was genuinely believed by the person making it; (2) that there was a reasonable basis for the statement; or (3) that the speaker was not aware of any undisclosed facts tending to

seriously undermine the accuracy of the statement. *Id.* Such statements are actionable under Rule 10b–5 to the extent that one of these implied factual assertions was inaccurate. *Id.*

In considering whether the market was misled by a particular statement of optimism, courts should keep in mind that "[p]rofessional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives, who have a personal stake in the future success of the company." *In re Verifone Sec. Litig.,* 784 F.Supp. 1471, 1481 (N.D.Cal.1992) (*citing Wielgos v. Commonwealth Edison Co.,* 892 F.2d 509, 515 (7th Cir.1989)).

Plaintiffs' allegations must be rejected for three reasons: First, Defendants' statements are too vague to constitute actionable fraud. *See Rogal v. Costello,* [1992–93 Tr. Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,245, at 95,093–94, 1992 WL 426467 (N.D.Cal. Oct. 8, 1992) (representation by management that "indicated a more positive outlook for the June quarter" and that there was an "apparent upswing" in the buying intentions of U.S. customers too vague to be actionable). Second, most of Defendants' statements relate only to past events, such as Caere's 1992 financial results. Statements regarding past events contain no implicit prediction that those events or conditions will continue in the future. *In re Convergent Technologies Sec. Litig.,* 948 F.2d 507, 513 (9th Cir.1991); *Verifone,* 784 F.Supp. at 1481; *In re Syntex Corp. Sec. Litig.,* No. 92–20548 SW, slip op. at 15, 1993 WL 476646 (N.D.Cal. Sept. 1, 1993).[3] Third, the few statements which could be construed as forward-looking relate only to Caere's long-term prospects. Even if Defendants were aware of facts suggesting that Caere's first quarter 1993 earnings might be depressed, they easily could have "genuinely believe[d]" that Caere's long-term outlook was good, and there could have been a "reasonable basis" for their belief. *Apple,* 886 F.2d at 113. Also, the alleged negative facts regarding the first quarter of 1993 would not have "seriously undermine[d]" the accuracy of the optimistic statements regarding Caere's long-term prospects. *Id.*

Accordingly, the above statements of optimism are not actionable under Rule 10b–5, and the claims related to them are DISMISSED WITHOUT LEAVE TO AMEND.

Plaintiffs also point to a March 15, 1993, press release, in which Caere's Chief Financial Officer is quoted as saying, when asked to comment on analyst's earnings forecasts, that Caere did not have "sufficient information" upon which to base a comment, that "the first quarter is typically slower, reflecting seasonality in Caere's business," and that "as a result, results for the [first] quarter are always difficult to predict." ¶ 49. This statement is not actionable under Rule 10b–5 for several reasons. First, it is too vague to constitute actionable fraud. *See Rogal v. Costello,* [1992–93 Tr. Binder] Fed. Sec.L.Rep. (CCH) ¶ 97,245, at 95,093–94, 1992 WL 426467 (N.D.Cal. Oct. 8, 1992). Second, if this equivocal statement can be construed as having any meaning at all, it indicates that first quarter results would be lower than expected. This would have tended to deflate, rather than inflate, Caere's share price. Accordingly, there is no causal link between the statement and the alleged "over-inflation" which is the crux of Plaintiffs' Amended Complaint. Finally, it is essentially a "no comment" statement, which is not actionable under most circumstances. *See Basic v. Levinson,* 485 U.S. 224, 238 n. 17, 108 S.Ct. 978, 987 n. 17, 99 L.Ed.2d 194 (1988). Therefore, the Rule 10b–5 claims related to the March 15, 1993, press release are DISMISSED WITHOUT LEAVE TO AMEND.

**B.** *Defendants Have Failed to Adequately Plead Their Rule 10b–5 Claims Regarding the Analysts' Forecasts*

Plaintiffs allege that several investment analysts issued misleading forecasts regarding Caere's first quarter 1993 earnings. They contend that Defendants adopted the analysts' misleading forecasts as their own, and should be held liable for them under Rule 10b–5, because (1) Defendants supplied

---

**3.** Furthermore, Defendants' statements do not exaggerate Caere's financial condition during

1992 so severely as to violate the standards announced in *Apple,* 886 F.2d at 1113.

the analysts with the information upon which the predictions were based; (2) met with the analysts on a regular basis; (3) the analysts gave Defendants an opportunity to comment on the forecasts; (4) "it was Caere's practice to have ... Defendants ... meet or speak with securities analysts on a regular basis to discuss ... anticipated sales and earnings and to provide detailed guidance to such analysts with respect to [Caere's] business and projected revenue and earnings;" and (5) that "defendants stated, indicated and confirmed [during meetings with analysts] that [Caere] would continue to experience strong growth in revenues and earnings during the first quarter of its 1993 fiscal year and thereafter." ¶¶ 19, 38–42, 48–49.

■ In order to hold a corporate insider liable under Rule 10b–5 for forecasts made by outside securities analysts or market makers, a plaintiff must demonstrate (1) that the insider adopted the forecast, *see Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 163 (2d Cir.1980), and (2) that the insider knew that the analysts' forecasts were unreasonable when made and failed to disclose their unreasonableness to investors. *See Wielgos v. Commonwealth Edison*, 892 F.2d 509, 516 (7th Cir.1989); *In re Verifone Securities Litigation*, 784 F.Supp. 1471, 1486–87 (N.D.Cal. 1992). The second requirement must be met in order to satisfy Rule 10b–5's scienter requirement. *Marx v. Computer Sciences Corp.*, 507 F.2d 485, 490 (9th Cir.1974); *Verifone*, 784 F.Supp. at 1486–87.

### 1. *Adoption*

■ A defendant has not adopted an analyst's forecast unless he has "sufficiently entangled [himself] with the analysts' forecasts to render those predictions attributable to [him]." *Elkind*, 635 F.2d at 163; *Verifone*, 784 F.Supp. at 1486; *Alfus v. Pyramid Technology Corp.*, 764 F.Supp. 598, 603 (N.D.Cal. 1991). A defendant is sufficiently entangled, for example, when he has reviewed the analysts' forecasts, and "by [his] activity, made an implied representation that the information ... is true or at least in accordance with the company's views." *Elkind*, 635 F.2d at 163. Merely providing analysts with histori-

cal information and correcting factual inaccuracies is not sufficient. *Id.*

There are sound reasons for a court to construe the entanglement requirement strictly. In today's complex and highly competitive financial markets, countless analysts, investment managers, market makers and investment banking firms issue earnings and revenue forecasts on virtually every publicly-traded corporation. Forecasts may vary a great deal. If corporate insiders are held liable under Rule 10b–5 every time one of these forecasts proves to be incorrect, they would likely spend more time in court than running their companies.

■ Also, if a loose and capricious entanglement standard is allowed to develop, it will be very difficult for corporate insiders to know how to regulate their behavior in such a way as to adopt only with those forecasts which they have carefully examined and have determined to be reasonably accurate. Corporate insiders should not be exposed to Rule 10b–5 liability for an analyst's forecast unless it is clear, based on the insider's conduct, that he could have reasonably foreseen that he would be held liable if the forecast turned out to be unreasonable when made and materially misleading to the investing public.

■ Furthermore, since the allegation of entanglement is central to the overall allegation of securities fraud, plaintiffs seeking to hold a corporate insider liable for an analyst's forecast should plead entanglement with the degree of specificity required under Federal Rule of Civil Procedure 9(b). Pleadings should at least (1) identify specific forecasts and name the insider who adopted them; (2) point to specific interactions between the insider and the analyst which gave rise to the entanglement; and (3) state the dates on which the acts which allegedly gave rise to the entanglement occurred. *Accord In re GlenFed Sec. Litig.*, 11 F.3d 843, 848 (9th Cir.1993); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir.1987); *Verifone*, 784 F.Supp. at 1487. Of course, plaintiffs are not required to plead facts which are "in the exclusive possession of the defendants." *Deutsch v. Flannery*, 823 F.2d 1361, 1365 (9th Cir.1987), *cert. denied*, 498 U.S.

818, 111 S.Ct. 62, 112 L.Ed.2d 37 (1990); *see also Wool,* 818 F.2d at 1439. However, much of the required information can be acquired from the analysts who made the allegedly misleading forecasts rather than from the defendants.

This heightened pleading requirement serves the policy goals of Federal Rule of Civil Procedure 11: First, it discourages plaintiffs and their attorneys from filing marginal or baseless complaints, since it is very unlikely that such complaints will survive a motion to dismiss. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 398, 110 S.Ct. 2447, 2454, 2457, 110 L.Ed.2d 359 (1990) (Central purpose of Rule 11 is to deter baseless filings, which "put[ ] the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay"); *accord* ABA Model Rules of Professional Conduct Rule 3.1 (1983) ("A lawyer shall not bring ... a proceeding ... unless there is a basis for doing so that is not frivolous."); *see also Verifone,* 784 F.Supp. at 1485–86 (noting that "[t]he costs imposed by [baseless securities actions], while not precisely measurable, become a deadweight loss for society."). Second, it forces plaintiff's attorneys to fulfill their responsibility to conduct a reasonable inquiry into the legal and factual basis for their allegations, since it is impossible to construct a viable complaint without having done so. *See* Fed.R.Civ.P. 11 Advisory Committee Note to 1983 Amendments (1983 Amendment stressed importance of attorney's affirmative duty to investigate facts and law); William W. Schwarzer, *Rule 11 Revisited,* 101 Harv.L.Rev. 1013, 1023 (1988) (discussing the value of an adequate pre-filing investigation). Third, it discourages claims designed only to harass defendants or extort settlements, since such claims will either never be filed or will be dismissed before they cause any serious harm. *See* Fed.R.Civ.P. 11 Advisory Committee Note to 1983 Amendments (1983 Amendment designed to give district courts more power to punish dilatory and abusive tactics); *accord* ABA Model Rules of Professional Conduct Rule 3.1 (1983); ABA Code of Professional Responsibility DR 7–102(A)(1) (1981); *see also GlenFed,* 11 F.3d at 848

(heightened pleading requirement for securities fraud allegations "assures at least a colorable factual basis for proceeding with the lawsuit," "protect[s] defendants from the reputational harm associated with fraud claims" and "deter[s] suits pursued for their settlement value.")

■ Plaintiffs' allegations regarding entanglement are conclusory and inadequate. The only specific statements alleged in the Amended Complaint which suggest an entanglement are Caere's Chief Financial Officer's March 15, 1993, comments regarding analysts' forecasts, indicating that Caere did not have "sufficient information" upon which to base a comment, that "the first quarter is typically slower, reflecting seasonality in Caere's business," and that "as a result, results for the [first] quarter are always difficult to predict." ¶ 49. It strains the intellect to imagine how this statement could constitute an entanglement. Caere's Chief Financial Officer was not embracing the analysts' forecasts when she made this statement. To the contrary, she was suggesting that the analysts' forecasts might be overly optimistic.

### 2. *Unreasonableness*

■ Plaintiffs have also failed to demonstrate that Defendants knew that the analysts' forecasts were unreasonable when they were issued. *See Wielgos v. Commonwealth Edison,* 892 F.2d 509, 516 (7th Cir.1989); *Verifone,* 784 F.Supp. at 1487. An analyst's forecast is unreasonable only if there was no reasonable basis for it at the time in which it was made. *Wielgos,* 892 F.2d at 516; *Verifone,* 784 F.Supp. at 1487. It is not enough that the forecast merely turned out to be incorrect. *Marx v. Computer Sciences Corp.,* 507 F.2d 485, 490 (9th Cir.1974); *Verifone,* 784 F.Supp. at 1486. A forecast can have a reasonable basis even if other, more negative information was available at the time it was issued. *Wielgos,* 892 F.2d at 516; *Verifone,* 784 F.Supp. at 1487. Furthermore, because the unreasonableness of the forecasts is central to the allegation of scienter, *see Verifone,* 784 F.Supp. at 1486–87, the facts supporting unreasonableness must

"provide a basis for a strong inference of fraudulent intent." *GlenFed,* 11 F.3d at 848.

Just like the entanglement requirement, the requirement that a forecast be unreasonable when made should be construed strictly. Modern American corporations are highly complex. A large corporation may create a significant number of internal reports, analyses and statistical compilations over a relatively short period of time. These reports may be contradictory—one may suggest a positive outlook, another may not. Where a corporation has compiled two forecasts, one positive and one negative, its insiders should not be punished under Rule 10b–5 for choosing to publish the wrong one unless they knew at the time of publication that the report chosen was unreasonable.

■ Here, Plaintiffs have merely (1) shown that information was available which contradicted the analysts' forecasts and (2) made a conclusory allegation that Defendants knew of and failed to disclose this information in order to further some fraudulent scheme to inflate Caere's share price. Such allegations are inadequate. *See Verifone,* 784 F.Supp. at 1486–87.

■ Because Plaintiffs have failed to adequately plead either entanglement or unreasonableness, the allegations relating to the analysts' forecasts are DISMISSED. It appears highly unlikely that Plaintiffs will be able to state a claim if allowed to amend. However, it is the general rule that leave to amend should be granted liberally. *See, e.g., Bodine Produce, Inc. v. United Farm Workers Org. Com.,* 494 F.2d 541, 556 (9th Cir. 1974); *In re Genentech Inc. Sec. Litig.,* [1989 Tr. Binder], Fed.Sec.L.Rep. (CCH) ¶ 94,544 at 93,479, 1989 WL 106834 (N.D.Cal. July 7, 1989), *modified on other grounds,* [1989–90 Tr. Binder], Fed.Sec.L.Rep. (CCH) ¶ 94,813, 1989 WL 137189 (N.D.Cal.Sept. 15, 1989). Accordingly, Plaintiffs shall have 30 days to amend their allegations regarding the analysts' forecasts. However, Plaintiffs are hereby advised that if their Second Amended Complaint is as conclusory and ostensibly

frivolous as the Amended Complaint, the Court will not hesitate to use the power granted to it under Rule 11 of the Federal Rules of Civil Procedure.

C. *Defendants' Insider Trading Claim Is Wholly Without Merit*

Plaintiffs have attempted to conjure up an independent insider trading claim under *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833 (2d Cir.1968), *cert. denied,* 404 U.S. 1005, 92 S.Ct. 561, 562, 563, 30 L.Ed.2d 558 (1971), and other government insider trading cases on the theory that Defendants had a duty to disclose the following information or refrain from trading: (1) Caere had oversupplied its distributors in 1992, and therefore Caere's first quarter 1993 earnings and revenues would be depressed, since the distributors would be able to fill orders from inventory purchased in 1992 rather than ordering new products from Caere in 1993; (2) product shipments would decline significantly during the first quarter of 1993 because of softening demand for Caere's key products; (3) Caere was offering "incentives" to its distributors that would adversely affect first quarter 1993 earnings; (4) Caere had committed to significant fixed overhead in order to support substantial sales, maintenance and manufacturing operations; (5) Caere's marketing expenditures had increased significantly; and (6) Caere's systems for determining and forecasting its financial performance were inadequate. ¶¶ 1, 55.

■ In essence, Plaintiffs' claim is that (1) Defendants should have realized based on this information that Caere's first quarter 1993 results would be depressed, and (2) Defendants should have disclosed this projection to the investing public. The very case upon which Plaintiffs rely, *Texas Gulf Sulphur,* reveals the fallacy of this argument: "[A]n insider [is not] obligated to confer upon outside investors the benefit of his superior financial or other expert analysis by disclosing his educated guesses or predictions." *Texas Gulf Sulphur,* 401 F.2d at 848.[4]

---

4. Plaintiffs argue that Defendants violated their duty to disclose under Rule 10b–5 by failing to disclose information in their 10–K, in violation of

Item 303 of SEC Regulation S–K, 17 C.F.R. 229.303(a)(1)–(3). This argument is without merit. The "demonstration of a violation of the

Accordingly, Plaintiffs' insider trading claim is DISMISSED WITHOUT LEAVE TO AMEND.

### D. State Law Claims

Plaintiffs' state law negligent misrepresentation claim is DISMISSED WITHOUT LEAVE TO AMEND, since all of the statements which Plaintiffs allege were misleading were made in routine SEC filings, press releases, or shareholder reports. *See Moskowitz v. Vitalink Communications Corp.*, 751 F.Supp. 155, 160–61 (N.D.Cal.1990).

Plaintiffs' remaining state law claims are DISMISSED WITH LEAVE TO AMEND because they have failed to plead reliance with the degree of specificity required under *Mirkin v. Wasserman*, 5 Cal.4th 1082, 23 Cal.Rptr.2d 101, 858 P.2d 568 (1993). Plaintiffs shall have 30 days to amend.

IT IS SO ORDERED.

disclosure requirements of Item 303 does not lead inevitably to the conclusion that such disclosure would be required under Rule 10b–5. Such a duty to disclose must be separately shown." *Alfus v. Pyramid Technology Corp.*, 764 F.Supp. 598, 608 (N.D.Cal.1991). The fact that Defendants may or may not have violated Item 303 is irrelevant to Plaintiffs' Rule 10b–5 claims. Accordingly, Plaintiffs' allegations based on SEC Regulation S–K are DISMISSED WITHOUT LEAVE TO AMEND.