In re QUARTERDECK OFFICE SYSTEMS, INC., SECURITIES LITIGATION.

This document relates to All Actions.

No. CV–92–3970–DWW(GHKx).

United States District Court, C.D. California.

March 29, 1994.

William S. Lerach, Millberg, Weiss, Bershad, Hynes & Lerach and Kirk Hulett and Randal Rein, Barrack, Rodos & Bacine, San Diego, CA, for plaintiffs Roth and Elias.

Joseph Ament, Chicago, IL, for intervening plaintiffs.

Charles S. Battles, Gibson, Dunn & Crutcher, Los Angeles, CA, for defendants Casilli and Genesis.

Douglas M. Schwab, Heller, Ehrman, White & McAuliffe, San Francisco, CA, for defendants LaHaye, Morgan, Peregrine Ventures and Firebird Partners.

Michael J. Weaver, Sheppard, Mullin, Richter & Hampton, San Diego, CA, for defendants Quarterdeck et al.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS

DAVID W. WILLIAMS, District Judge.

### NATURE OF THE ACTION

Plaintiffs in this action, Harriet Roth ("Roth") and Abraham S. Elias ("Elias"), purchased stock from Quarterdeck Office Systems, Inc. ("Quarterdeck") on October 4, 1991 and September 26, 1991, respectively. By an order issued March 24, 1994, this court permitted eight plaintiffs-in-intervention to join this action. The new plaintiffs are: James J. Toczek, Betsy Howard, Marvin I. Kushner, Robert E. Buckley, Jr., William H. Burrell, Patrick O. Bevers, Robert E. Buckley, and Nancy Buckley.

Defendants are Quarterdeck, its officers and directors, including outside directors Casilli, LaHaye and Morgan and three venture capital firms, Genesis Capital, Peregrine Ventures and Firebird Partners which own 17%, 17.1% and 4% of Quarterdeck's stock, respectively. Quarterdeck develops, markets and supports software products designed to enhance the performance of personal computer hardware and software that use the Disk Operating System ("DOS"). International Business Machines, Inc. ("IBM"), introduced DOS in its personal computers in 1981. Since 1981, other computer companies have introduced their own versions of DOS, making personal computers running DOS the largest segment of the personal computer market. Quarterdeck's products are designed to enable owners of DOS-based computer systems to run several software applications simultaneously and to transfer data between them, as well as to increase the available application memory so that programs run more efficiently.

On June 1, 1991, Quarterdeck offered securities to the public for the first time in its Initial Public Offering ("IPO"). In the four quarters following the IPO, Quarterdeck experienced positive results in the form of increased net sales and earning per share. On July 1, 1992, Quarterdeck issued a press release stating that it anticipated that net sales and earnings would decline and that revenues and earnings would be below analyst expectations for the quarter. The stock market reacted to this press release and the price of Quarterdeck's stock dropped 57%.

The next day, July 2, 1992, plaintiffs Roth and Elias filed a securities fraud action against defendants asserting two claims for relief. Plaintiffs' first claim, brought under § 11 of the Securities Act of 1933, 15 U.S.C. § 77k, alleges that the prospectus and registration statement that defendants filed before the IPO, contained material misstatements and omissions. Plaintiffs' second claim, brought under § 10(b) and 20 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j and § 78t, and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5, alleges that defendants misrepresented and concealed Quarterdeck's current and future financial condition throughout the class period.

### NATURE OF THE MOTIONS

These motions for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) are brought by three groups of defendants on shared and separate grounds. Quarterdeck Office Systems, Inc., Therese E. Myers, Gary W. Pope, Ronald B. Hammond, Gary A. Saxer, Stanton H. Kaye, and Robert K. Gray (hereinafter referred to as the "Quarterdeck" defendants) have filed a motion which essentially argues that they are entitled to judgment on the pleadings because 1) due to this court's October 4, 1993 order, this is no longer a class action, thus many of the alleged misstatements cannot be used to support the fraud claim, and 2) new case law has

been decided since this court's June 18, 1993 Order Denying Defendants' Motion to Dismiss which mandates judgment in their favor.

Defendants Frank W.T. LaHaye, Howard L. Morgan, Peregrine Ventures, and Firebird Partners (collectively, the "Venture Capitalists") have filed their own motion for judgment on the pleadings in which they join in Quarterdecks' arguments and contend that they are entitled to judgment on the independent grounds that the pleadings fail to link them to any of the alleged misrepresentations or omissions. Defendants Gerald S. Casilli and Genesis Capital Limited ("Casilli") have filed a motion in which they join in both Quarterdeck and the Venture Capitalists' 12(c) motions.[1]

Plaintiffs Roth and Elias have filed one opposition which addresses all of the positions taken by the various defendants. The court heard oral argument on these motions on March 21, 1994 and took the matter under submission.

## DISCUSSION

### A. *QUARTERDECKS' MOTION FOR JUDGMENT ON THE PLEADINGS*

Quarterdeck contends that they are entitled to judgment pursuant to Rule 12(c), which permits any party to move for judgment on the pleadings after the pleadings are closed *if to do so would not delay the trial.* Fed.R.Civ.P. 12(c). In ruling on a 12(c) motion, the court must accept as true all allegations in the complaint and construe them in the light most favorable to the plaintiffs. *General Conference Corp. of Seventh–Day Adventists v. Seventh–Day Adventists Congregational Church,* 887 F.2d 228, 230 (9th Cir.1989). Thus, defendants are not entitled to judgment on the pleadings if the complaint raises issues of fact which, if proved, would permit recovery. *Id.; Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir.1989). A motion for judgment

on the pleadings must be denied unless it appears "to a certainty" that no relief is possible under any state of facts the plaintiffs could prove in support of their claim. *Mostowy v. United States,* 966 F.2d 668, 672 (Fed.Cir.1992).

### 1. *Change of Case Due to Denial of Class Certification*

Quarterdeck claims that plaintiffs' § 10(b) claim has been substantially curtailed due to this court's October 4, 1993 order because *that order eliminated as plaintiffs all members* of the proposed class except the individually named plaintiffs, Roth and Elias. Therefore, Quarterdeck contends that plaintiffs have no § 10(b) claim based on misrepresentations or omissions allegedly made by defendants after Roth and Elias purchased their stock.

It is well established law in the Ninth Circuit that "allegedly fraudulent acts which occur after a plaintiff's purchase of stock cannot form the basis of a § 10(b) claim because the acts were not performed in connection with the purchase or sale of securities." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 501 (9th Cir.1992) (citing *Williams v. Sinclair,* 529 F.2d 1383, 1389 (9th Cir. 1975)).

■ Defendants correctly contend that they are entitled to judgment on that portion of plaintiffs' § 10(b) claim that is based on alleged misstatements made after the latest date that a plaintiff purchased shares. However, that date is not, as defendants contend, October 4, 1991. The eight new plaintiffs to this action purchased shares after Roth and Elias. The last of the new plaintiffs to purchase shares was Marvin I. Kushner who purchased his 200 shares on April 2, 1992. Therefore, the court grants defendants' motion for judgment on the pleadings as to the portion of plaintiffs' § 10(b) claim that is based on alleged misstatements or omissions made after April 2, 1992.[2]

---

1. In the discussion to follow, any reference to Quarterdeck's arguments should be interpreted as arguments made not only by Quarterdeck, but also by the Venture Capitalist and Casilli defendants.

2. Those allegations are pleaded in the following paragraphs of the TAC: 56, 57, 58, 59, 61, 62 and 64. The court grants defendants' motion with regard to all of these paragraphs, except paragraph 64. With regard to paragraph 64, defendants are entitled to judgment only on the

Plaintiffs argue that none of the allegations of misstatements should be stricken from the Third Amended Complaint ("TAC") on this ground because all of the allegations are essential to their common course of conduct and conspiracy allegations. The TAC does not contain a claim for conspiracy. However, it does refer to the common course of conduct allegedly engaged in by defendants. Plaintiffs claim that the common course of conduct allegedly engaged in by defendants is important to establishing scienter for purposes of the 10b–5 claim.

■ Rule 10b–5 requires plaintiffs to prove "an intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976). To survive a motion for dismissal a complaint must contain, at a minimum, "factual allegations that would support a reasonable inference" that "circumstances adverse" to the defendant's statements "were known and deliberately or recklessly disregarded" at the time the statements were made. *Romani v. Shearson Lehman Hutton*, 929 F.2d 875 (1st Cir.1991). This determination can be made based on a consideration of the facts specific to a single statement or omission; it is not necessary for the court to consider all of the alleged misstatements or omissions as a whole. For this reason, the court grants defendants' motion for judgment on the pleadings as to all alleged misstatements or omissions which issued after April 2, 1992. Since plaintiffs have requested leave to amend their complaint as to any claims which the court dismisses, the court grants plaintiffs leave to amend with regard to these allegations if and when a plaintiff joins this action who purchased his or her stock after the time that the alleged misstatement issued.

### 2. *Substantive Basis for Judgment on Pleadings*

In their opposition, plaintiffs contend that the portion of Quarterdecks' motion that discusses "new" case law is, in fact, a motion for reconsideration of this court's June 18, 1993

portion that alleges that any financial statements issued after April 2, 1992 were false or mislead-

order denying Quarterdecks' motion to dismiss, as opposed to a motion for judgment on the pleadings. A careful review of the case law cited in Quarterdeck's motion reveals that some of the cases cited by defendants restate law that was in existence prior to this court's June, 1993 order.

■ Local Rule 7.16 states that a motion for reconsideration of the decision on any motion may be made on the grounds of:

"(a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or

(b) the emergence of new material facts or a change of law occurring after the time of such decision, or

(c) a manifest showing of a failure to consider material facts presented to the Court before such decision."

Local Rule 7.16. However, this court is not of the opinion that the purpose of Local Rule 7.16 is to prohibit courts from reconsidering arguments previously made before the court, but rather to justify a court's refusal to hear such arguments when they have already been given full consideration. This court will not deny defendants' motions merely because some portion of the arguments set forth therein were or could have been previously made in the earlier motions to dismiss.

Quarterdeck calls the court's attention to five cases which were recently decided which they contend mandate judgment in their favor. The cases cited by Quarterdeck are:

1) *In re VeriFone Securities Litigation*, 11 F.3d 865 (9th Cir.1993);

2) *In re Lyondell Petrochemical Co. Securities Litigation*, 984 F.2d 1050 (9th Cir. 1993);

3) *In re Trump Casino Securities Litigation*, 7 F.3d 357 (3rd Cir.1993);

4) *Raab v. General Physics Corp.*, 4 F.3d 286 (4th Cir.1993);

ing.

5) *In re GlenFed, Inc. Securities Litigation*, 11 F.3d 843 (9th Cir.1993)

Although some of these cases present new law that is relevant to some of the allegations in the TAC, the court will not engage in a case-by-case analysis of these decisions, as the cases do not, by themselves, justify judgment on the pleadings with regard to the entire complaint. The remainder of the discussion of Quarterdeck's motion will be divided into the three types of claims in the TAC: a) allegations based on the Prospectus; b) allegations based on other misstatements by Quarterdeck; and c) statements by analysts.

### a. Allegations Based on the Prospectus

■ The claims based upon the Prospectus allege that certain statements in the Prospectus are false and misleading because they fail to adequately disclose material information. In a securities fraud action, a court may only rule as a matter of law on claims based on failure to disclose information if disclosure is so obvious that reasonable minds could not differ. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1268 (9th Cir.1987), *cert. denied Wyoming Community Development Authority v. Durning*, 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987).

■ In arguing that judgment on the pleadings is warranted, defendants call this court's attention to a recent case decided by the Third Circuit addressing the "bespeaks caution" doctrine, *In re Donald J. Trump Casino Securities Litigation.* 7 F.3d 357 (3rd Cir.1993). The *Trump* court summarized the bespeaks caution doctrine as follows:

> [W]e can state as a general matter that, when an offering document's forecasts, opinions or projections are accompanied by meaningful cautionary statements, the forward-looking statements will not form the basis for a securities fraud claim if those statements did not affect the "total mix" of information the document provided investors. In other words, cautionary language, if sufficient, renders the alleged omissions or misrepresentations immaterial as a matter of law.

*Id.* at 371. The application of bespeaks caution depends on a case-by-case analysis of the specific text of the offering document or other communication at issue. *Id.; See Flynn v. Bass Bros. Enters.*, 744 F.2d 978, 988 (3rd Cir.1984). Thus, an analysis of whether the Prospectus bespeaks caution, necessitates looking at the cautionary language of the Prospectus itself.

■ Paragraph 29 of the TAC alleges that a statement in the Prospectus regarding the market for Quarterdeck's products and the competition the products face was misleading because the Prospectus failed to disclose what plaintiffs characterize as material information. Paragraphs 29(a) through 29(p) set forth the omitted material facts which plaintiffs allege make the statement in the Prospectus false and misleading. The allegations in paragraphs 29(a), (b), (c), (d), (e), (f), (g), (h), (i), and (k) have to do with Quarterdeck's competitive position in the market, the potential market for Quarterdeck's products and the impact of Microsoft's products. When these allegations of omissions are held up against the portion of the Prospectus entitled "Risk Factors", it is clear that the Prospectus adequately bespeaks caution. The Prospectus clearly spells out the competition that their products are facing and will face in the future at pages 15, 16, 17, and 19. This cautionary language is so thorough that it negates the allegations of omissions in the above-referenced paragraphs.

Paragraph 29(j) alleges that Quarterdeck faced softening demand and increased competition concerning its higher-priced products. However, Quarterdeck warned investors that competitive pressure could result in price reductions and a decline in sales volume at page 5 of the Prospectus.

Paragraph 29(*l*), (m) and (n) have to do with Quarterdeck's failure to warn of alleged difficulties in completing and shipping DESQview/X, and the effect that would have upon their position in the market. The Prospectus adequately addresses these concerns at pages 5 and 12 of the Prospectus. Therefore, the Prospectus' cautionary statements negate the impact of the alleged omissions.

However, paragraphs 29(*o*) and (p) and paragraph 30(a) through 30(e) contain allegations of omissions which are not warned

against in the Prospectus. These paragraphs allege, among other things, that Quarterdeck's revenues were artificially inflated; that the company's internal financial and accounting controls were materially deficient, resulting in inaccurate public releases and reports; and that the true purpose of the Initial Public Offering ("IPO") was to raise capital for Quarterdeck that it would not be able to obtain after the problems with its new products became public knowledge. *See* TAC, ¶ 29(*o*), (p), and 30(a)–(e).

■ Paragraph 31 of the TAC alleges, in general, that the warnings in the Prospectus were inadequate because Quarterdeck had test models of MS–DOS 5.0 products which would compete with Quarterdeck's new products, and therefore knew that their products would soon become obsolete. However, the Prospectus spells out in great detail the risk associated with competing products from Microsoft and IBM at pages 15, 19 and 25. Quarterdeck was required to disclose known risks, not to draw negative conclusions from these risks. *In re Syntex Securities Litigation*, 1993 WL 476646 (N.D.Cal.1993). In *Syntex*, the court found that where a company had disclosed hard data about the characteristics of its products and sales levels, it "had no duty to denigrate itself as Plaintiffs allege." *Id.* at 5. Furthermore, *In re VeriFone* establishes that defendants are not required to disclose any forecasts or conclusions that they may have drawn from the test models, as long as they did not withhold financial data or other existing facts from which forecasts are usually derived. *In re VeriFone Securities Litigation*, 11 F.3d 865, 869 (9th Cir.1993). Thus, defendants are entitled to judgment with regard to the allegations set forth in paragraph 31.

Paragraph 32 alleges that the risk factors were inadequate because they failed to reveal that the company's future prospects were already being impaired by their competitors' superior products. However, at pages 15, 25 and 26 of the Prospectus, Quarterdeck acknowledges that its products have direct competition and will face more competition from other Microsoft and IBM products. These statements, in combination with the other cautionary statements in the Prospec-

tus, adequately inform a reader of the Prospectus of the competition facing Quarterdeck's products, and therefore, nullify the alleged omissions under the bespeaks caution doctrine.

The allegations in paragraphs 29(a), (b), (c), (d), (e), (f), (g), (h), (i), (j), (k), (*l*), (m), (n), 31 and 32 rest primarily upon plaintiffs' contention that defendants omitted to disclose information that an investor would have considered material to the decision to invest. Because the alleged omissions were adequately warned against in the Prospectus' Risk Factors section, the court grants defendants' motion for judgment on the pleadings with regard to these paragraphs and any other paragraphs that generally plead the allegations contained therein. The court denies plaintiffs leave to amend their complaint to restate any allegations similar to those contained in these paragraphs, unless they are based on documents or statement other than the Prospectus.

b. Other Misstatements by Quarterdeck

The TAC contains a number of allegations of misstatements and omissions by Quarterdeck in support of plaintiffs' 10b–5 claim. These allegations are contained in paragraphs 28, 34, 43, 44, 45, 46, 47, 48, 49, 56, 57, 58 and 59.

■ Paragraph 28 alleges that a press release issued by Quarterdeck on May 28, 1991 was false and misleading because it failed to disclose the difficulties Quarterdeck was encountering in completing development · of DESQview/X, which would delay its introduction and put it at a competitive disadvantage. Taking, as the court must, this allegation to be true, such an omission is material because it would likely "be viewed by the reasonable investor as significantly altering the total mix of available information." *Colby v. Hologic, Inc.*, 817 F.Supp. 204, 209 (D.Mass.1993) (citing *TSC Industries, Inc. v. Northway*, 426 U.S. 438, 445, 96 S.Ct. 2126, 2130, 48 L.Ed.2d 757 (1976). Therefore, the court denies Quarterdeck's motion with regard to paragraph 28 of the TAC.

Paragraph 34 alleges that statements made by Quarterdeck's President Myers in a July 1, 1991 article were false and misleading

because it failed to disclose the true purpose of the IPO. These allegations are substantially the same as those set forth in paragraph 30, and should not be dismissed for the same reasons.

■ Paragraphs 43 through 49 allege that a number of statements in press releases, Reports to Shareholders, and articles contain statements by Quarterdeck that are rendered false and misleading for the reasons enumerated in paragraph 50(a) through (y) and 51(a) and (b). These paragraphs refer, among other things, to statements of the factors behind Quarterdeck's high revenues for various fiscal quarters. These statements are actionable under Rule 10b–5 because plaintiffs allege in paragraph 50(*o*) and (p) that Quarterdeck's revenues were artificially inflated. If true, this is a material omission that makes the statements in the aforementioned paragraphs false and misleading.

The allegations of misstatements contained in paragraphs 56, 57, 58, and 59 are dismissed without prejudice because they all issued after April 2, 1992, and therefore cannot be the basis for a claim of fraud under Rule 10b–5. *See supra,* at 1469–1470. Plaintiffs are hereby granted leave to amend their complaint to state claims based upon these statements if a plaintiff joins this action who purchased his or her shares after the date the statement issued.

### c. Statements by Analysts

Paragraphs 24, 25, 26, 35, 36, 37, 38, 39, 40, 41, 52, 53, 54, 60 and 61 contain alleged misstatements by analysts for which plaintiffs seek to hold defendants accountable.

■ In order to hold defendants liable under Rule 10b–5 for forecasts made by outside securities analysts, plaintiffs must prove: "(1) that the insider adopted the forecast, *see*

*Elkind v. Ligget & Meyers, Inc.,* 635 F.2d 156, 163 (2nd Cir.1980), and (2) that the insider knew that the analysts' forecasts were unreasonable when made and failed to disclose their unreasonableness to investors." *In re Caere Corporate Securities Litigation,* 837 F.Supp. 1054, 1059 (N.D.Cal.1993). A defendant has not adopted an analyst's statement "unless he has "sufficiently entangled [himself] with the analysts' forecasts to render those predictions attributable to [him]." *Elkind,* 635 F.2d at 163; *VeriFone,* 784 F.Supp. at 1486; *Alfus v. Pyramid Technology Corp.,* 764 F.Supp. 598, 603 (N.D.Cal. 1991)." *Caere,* 837 F.Supp. at 1059.[3]

■ The only allegations plaintiffs make with regard to defendants' adoption of the analysts' statements are that the statements were based on information provided by defendants (paragraph 42) and that defendants were in constant contact with the analysts (paragraph 33). Plaintiffs do not allege facts tending to establish that Quarterdeck placed its imprimatur on the projections, thereby adopting them as their own. *In re VeriFone Securities Litigation,* 784 F.Supp. 1471, 1486 (N.D.Cal.1992). Because plaintiffs have failed to plead facts that would allow them to hold defendants accountable for the statements of the analysts, this court grants defendants' motion for judgment with regard to paragraphs 24, 25, 26, 35, 36, 37, 38, 39, 40, 41, 52, 53, 54, 60 and 61, and any other paragraphs of the TAC that generally allege similar grounds for liability.

### d. False Financial Statements

In paragraphs 64, 65, 66, 67, 68 and 69 of the TAC, plaintiffs allege that Quarterdeck's financial statements for fiscal year 1991, ended September 30, 1991 and the first two quarters of fiscal 1992, ended December 31, 1991 and March 31, 1992, respectively, did

---

**3.** The *Caere* court found the following allegations to be insufficient to establish that defendants adopted the analysts' forecasts: (1) Defendants supplied the analysts with the information upon which the predictions were based; (2) met with the analysts on a regular basis; (3) the analysts gave Defendants an opportunity to comment on the forecasts; (4) "it was Caere's practice to have ... Defendants ... meet or speak with securities analysts on a regular basis to discuss ... antici-

pated sales and earnings and to provide detailed guidance to 'such analysts with respect to [Caere's] business and projected revenue and earnings;" and (5) that "defendants stated, indicated and confirmed [during meetings with analysts] that [Caere] would continue to experience strong growth in revenues and earnings during the first quarter of its 1993 fiscal year and thereafter." ¶¶ 19, 38–42, 48–49. *Caere,* 837 F.Supp. at 1058–59.

not fairly represent Quarterdeck's financial condition.

In order to state a claim for material omissions or misstatements under Rule 10b–5, plaintiffs must "prove both transaction causation, that the violations in question caused the plaintiff to engage in the transaction, and loss causation, that the misrepresentations or omissions caused the harm." *McGonigle v. Combs*, 968 F.2d 810, 820 (9th Cir.1992). Nowhere in the TAC do plaintiffs allege that falsification of Quarterdeck's financial statements caused them to purchase the company's stock. This is a fatal flaw to their allegations of falsified financial documents as part of their 10b–5 claim. For this reason, the court grants defendants' motion for judgment with regard to paragraphs 64, 65, 66, 67, 68 and 69 and any other paragraphs that generally allege that defendants falsified their financial statements. The court grants plaintiffs leave to amend the TAC to reallege these claims if they can plead specific facts tending to establish that plaintiffs' false financial statements caused them to purchase their shares of stock.

## B. *VENTURE CAPITALISTS AND CASILLI'S MOTIONS FOR JUDGMENT ON THE PLEADINGS*

The group of defendants called Venture Capitalists is comprised of a number of outside directors and venture capitalists who owned stock in Quarterdeck during the relevant time period. As mentioned earlier, the Venture Capitalists join Quarterdeck in their motion, and have filed their own motion raising an independent basis for judgment in their favor. Defendant Casilli, a director for Quarterdeck from 1982 to September of 1991, and his new company, have joined the Venture Capitalists defendants in this motion.

None of the Venture Capitalists, VCs for short, uttered or wrote any of the alleged misstatements listed in the TAC. The basis of their motion is that the pleadings fail to link them to the alleged misrepresentations that are the basis of the action. They use this deficiency to raise two challenges to the

TAC. The first is that the *GlenFed* decision, discussed *supra*, "reiterated and elaborated" on the requirement that "times, dates, places or other details of [the] alleged fraudulent involvement of the actors" be pleaded in the complaint. *GlenFed*, 11 F.3d at 848 (citing *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985)). However, this is not new law, and since it was adequately considered by this court in ruling upon defendants' previous motion to dismiss this court will not consider this as grounds for judgment on the pleadings.

However, the VCs do present another ground for judgment which is meritorious. The second challenge is based upon the plaintiffs' attempt to link these defendants to the alleged misstatements through use of the "group pleading" doctrine. When a plaintiff alleges fraud, Rule 9(b) requires that the complaint attribute particular fraudulent acts or statements to a particular defendant. *See e.g., In re XOMA Corp. Securities Litigation*, [1991–92 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 96,491, at 92,160, 1990 WL 357807, at *5 (N.D.Cal.1991). However, the Ninth Circuit has recognized an exception to this rule where the alleged misstatements can be attributed to a group:[4]

> Where the misrepresentations alleged take the form of "group published information" [defined to include prospectuses, registration statements, annual reports, press releases, and 10–Q filings] then plaintiffs may plead fraud by officers and executives *involved in the day to day management* of those parts of the corporation involved in the fraud through general averment.

*O'Sullivan*, No. C–93–20621–RMW, at 24–25, 1994 WL 124453, at *13 (citing *In re Sunrise Technologies Securities Litigation*, [1992 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,042 at 94,584, 1992 WL 359636, at *3 (N.D.Cal. Sept. 22, 1992)) (emphasis added; bracketed passage in original). Although the VCs allow that the court did cite to this law in the June 18 order, they contend that the court erred in concluding that the TAC al-

---

**4.** *O'Sullivan v. Trident Microsystems, Inc.*, No. C–93–20621–RMW, 1994 WL 124453, at *13

(N.D.Cal. Feb. 2, 1994, slip op., at 24–25).

leged that these defendants were involved in the day to day management of the corporation.

■ Paragraph five of the TAC is the paragraph that plaintiffs rely upon to plead facts establishing that these defendants were involved in the day to day operations of Quarterdeck:

> 5. LaHaye, Myers, Pope, Hammond, Saxer, Kaye, Morgan, Gray and Casilli (collectively the "Individual Defendants" or "Insiders"), as officers and/or directors or control persons of the Company, controlled the contents of the Prospectus, quarterly and annual reports, press releases and presentations to securities analysts referenced herein and were provided with copies of them prior to or shortly after their issuance and had the ability to prevent their issuance or cause them to be corrected. As a result, each Individual Defendant is responsible for the accuracy of those reports.

TAC ¶ 5, at 3. Even accepting these allegations as true, as the court must in considering this motion, these allegations are insufficient to satisfy the group pleading test. Although these allegations do establish that these defendants probably saw some of the reports before they were made public, this is insufficient in the Ninth Circuit to pull defendants within the group pleading doctrine.

Plaintiffs cite to three recent decisions by district courts in the Ninth Circuit that set forth a new standard for the group pleading doctrine. However, this standard has, in one instance, been later repudiated by the same judge who originally announced it, and has yet to be recognized by a higher court. The day to day standard, on the other hand, is recognized by the Ninth Circuit. *See Moore v. Kayport Packaging Exp., Inc.*, 885 F.2d 531, 541 (9th Cir.1989).

Since this court erred in finding that the TAC sufficiently alleged facts showing that the VC defendants were involved in the day to day operations of the corporation, and because subsequent pleadings have not pleaded additional facts on this issue, the court hereby grants the VC defendants' motion for judgment on the pleadings as to all allegations of misstatements or omissions.

The court grants Casilli's motion for judgment on the pleadings because he cannot be held liable for statements made either prior to or after his resignation as plaintiffs have not alleged that he was involved with the day to day operations of the corporation, and therefore, the group pleading requirement cannot be used to link any of the statements to Casilli. The court grants plaintiffs leave to amend if they can plead specific facts tending to establish that these defendants were involved in the day to day operations of Quarterdeck.

## CONCLUSION

Through the Quarterdeck defendants' motion, defendants have established that all of the defendants are entitled to judgment on the pleadings with regard to misstatements or omissions made after April 2, 1992, the date that the last plaintiff purchased shares of Quarterdeck stock. This court concludes that all allegations that the Prospectus was false and misleading for failing to adequately disclose the details regarding competition for Quarterdeck's products should be dismissed with prejudice. However, Quarterdeck's motion is denied with regard to allegations of misstatements or omissions by Quarterdeck other than those in the Prospectus. This court dismisses without prejudice all allegations of liability based upon statements made by analysts or falsified financial statements.

The Venture Capitalists defendants, along with the Casilli defendants, have also established that plaintiffs have not alleged facts sufficient to apply the group pleading doctrine to link the alleged misstatements to them. Therefore, they are entitled to judgment on the pleadings. However, plaintiffs are granted leave to amend their complaint if they can allege facts that specifically show that these defendants were involved in the day to day operations of the corporation.

## RECOMMENDATION

IT IS HEREBY ORDERED that Quarterdeck's Motion for Judgment on the Pleadings is:

1. GRANTED as to Paragraphs 56, 57, 58, 59, 61, 62, and 64 (to the extent that it

alleges that financial statements issued after April 2, 1992 were false or misleading), and any other paragraphs which generally allege that defendants made false of misleading statements or omissions after April 2, 1992. Plaintiffs are granted leave to amend the TAC to plead allegations of misstatements or omissions issued after April 2, 1992 if a plaintiff should join the action who purchased his or her shares after the date of the alleged misstatement or omission.

2. GRANTED as to Paragraphs 29(a)–(n), 31 and 32 and any other paragraphs of the TAC that generally allege what is specifically alleged in those paragraphs. These allegations are dismissed with prejudice. The only allegations of fraud based on the Prospectus that survive this order are Paragraphs 29(o) and (p) and 30(a)–(e).

3. DENIED as to Paragraphs 28, 34, 43, 44, 45, 46, 47, 48 and 49.

4. GRANTED as to Paragraphs 24, 25, 26, 35, 36, 37, 38, 39, 40, 41, 52, 53, 54, 60 and 61 and any other paragraphs that generally allege that defendants are liable for misstatements or omissions made by analysts. Plaintiffs are granted leave to amend the TAC to allege specific facts tending to establish that defendants adopted the statements made by the analysts.

5. GRANTED as to Paragraphs 64, 65, 66, 67, 68 and 69 of the TAC and any other paragraphs that generally allege that defendants falsified their financial statements as part of a fraud upon the investors. Plaintiffs are granted leave to amend the TAC to allege specific facts tending to establish that the alleged falsified statements caused plaintiffs to purchase Quarterdeck's stock.

IT IS FURTHER ORDERED that Defendants Frank W.T. LaHaye, Howard L. Morgan, Peregrine Ventures, Firebird Partners, Gerald S. Casilli and Genesis Capital's Motions for Judgment on the Pleadings are hereby GRANTED. Plaintiffs are granted leave to amend the TAC to allege specific facts tending to establish that the outside directors were involved in the day to day operations of Quarterdeck.

Plaintiffs have 20 days from the date of this order to amend their complaint.

IT IS SO ORDERED.