### In re GLENFED, INC. SECURITIES LITIGATION.

John Paul DECKER; Arnold Cohen; Gary Haskins; Larry Schwartz; Gary F. Young; Elbridge Ruhl Graef, Trustee u/w of Charlotte R. Graef on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

GLENFED, INC.; Norman M. Coulson; Raymond D. Edwards; Dann V. Angeloff; Dean R. Bailey; Charles T. Blair; Douglas A. Clarke; Morris K. Daley; Richard O. Kearns; Walter A. Ketcham; Jean C. Roeschlaub; Jack D. Steele; Gilbert R. Vasquez; E. Gex Williams, Jr.; Keith P. Russell, Jr., Defendants–Appellees.

No. 92–55419.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 3, 1993.

Memorandum Filed Sept. 15, 1993.

Order and Opinion Filed Nov. 15, 1993.

As Amended Dec. 22, 1993.

Order Granting Rehearing En Banc Feb. 25, 1994.

personal jurisdiction over Solna Delaware.

Martha A. Evans & John N. Zarian, Greenfield & Chimicles, Los Angeles, CA, Kenneth A. Jacobsen, Christopher T. Reyna & Ira N. Richards, Greenfield & Chimicles, Haverford, PA, Michael S. Glassman & Kathleen L. Clemens, Clemens, Glassman & Clemens, Los Angeles, CA, Warren Rubin, Deborah R. Gross & Ann D. White, Gross & Metzger, Philadelphia, PA, Lawrence A. Sucharow & Ira Schochet, Goodkind, Labaton & Rudoff, New York City, Alfred G. Yates, Jr., Alfred G. Yates, Jr. & Associates, Pittsburgh, PA, Sherrie R. Savett, Berger & Montague; Howard Sedran, Levin, Fishbein, Sedran & Berman; and Harris J. Sklar, Law Offices of Harris J. Sklar, Philadelphia, PA, for plaintiffs-appellants.

Martin C. Washton, Rory M. Hernandez and Kevin S. Rosen, Gibson, Dunn & Crutcher, Los Angeles, CA, for defendants-appellees.

Before: BROWNING, FARRIS and KELLY,* Circuit Judges.

The memorandum disposition filed September 15, 1993, is redesignated as an authored opinion by Judge Kelly.

PAUL KELLY, Jr., Circuit Judge:

### Background

GlenFed, Inc. is a real estate and financial services holding company that declared a $140.8 million loss for the second quarter of fiscal year ("FY") 1991, after several years of reporting profitable operations. John Decker and other investors (the proposed class, or the "Plaintiffs") appeal the district court's dismissal of their second amended complaint against GlenFed, Inc. and its officers and directors under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. §§ 78j(b) and 78t(a), Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated by the Securities and Exchange Commission (SEC), and §§ 11, 12 and 15 of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. §§ 77k, 77l and 77o, and various California state law theories including fraud, deceit and negligent misrepresentation.

Plaintiffs allege that GlenFed's officers and directors made misrepresentations and omissions designed to conceal GlenFed's deteriorating financial condition, lack of adequate internal controls and declining market. Plaintiffs contend that the district court erred in dismissing their complaint for failing to plead fraud with particularity, Fed. R.Civ.P. 9(b), and for failing to adequately allege conspiracy, aiding and abetting and

---

* Honorable Paul Kelly, Jr., Circuit Judge, United States Court of Appeals for the Tenth Circuit, sitting by designation.

control person liability. Plaintiffs further contend that, in rejecting a "fraud on the market" theory of reliance, the district court prematurely dismissed their state law claims. We resolve the case on the adequacy of the complaint under Rule 9(b).

*Discussion*

## I. Major Claims of the Plaintiffs

Plaintiffs claim that GlenFed concealed deficiencies concerning its asset monitoring and loan underwriting policies that affected the quality of assets. They also claim that GlenFed understated loan loss reserves and failed to disclose the true facts regarding the disposition of subsidiaries, instead attempting to gain more favorable accounting treatment than the true facts would have warranted.

### A. Asset Quality and Strict Credit Procedures

GlenFed's annual reports referred to its "superior" or "excellent" asset quality and "stringent," "strict" and "rigorous" underwriting and credit procedures. Plaintiffs refer to a $20 million reduction in non-performing assets in the fourth quarter of 1990, supposedly attributable to rigorous loan approval and asset review procedures. According to Plaintiffs, it was apparent to the Defendants at least until June 1990 that loan underwriting and monitoring policies were inadequate and were not being followed. They contend that non-public information was available to the Defendants (reports from the internal audit department, an accounting firm providing management advisory services, government regulators and an investment banking firm) revealing that GlenFed's procedures were inadequate to detect non-performing assets and set loan loss reserves. Plaintiffs allege the following facts: inaccurate (delayed) reporting of in-substance foreclosures (where collateral's fair value is less than the carrying value of the loan); inadequate monitoring of a loan to one borrower; failure to timely refer loans to foreclosure; concentration on loans 91 + days delinquent, rather than also attending to loans 31–60 and 60–90 days delinquent; and failing to update appraisals.

### B. Loan Loss Reserves

GlenFed embarked on a restructuring program with the stated purpose of improving core earnings and increasing capital as would be required by the Financial Institutions Reform, Recovery and Enforcement Act (FIR-REA). Form 10–Q filed with the SEC for the second quarter of FY 1990 characterized a $35 million increase in loan loss reserves as primarily due to a $30 million special charge to increase loan loss reserves to a more conservative level. In December 1990 (the second quarter of FY 1991), however, GlenFed announced that loan loss reserves were inadequate and had to be increased by $150 million, resulting in a $141 million loss and elimination of dividend payments. According to Plaintiffs, the cause of the huge increase in loan loss reserves was the result of finally disclosing what the Defendants knew all along, despite prior statements to the contrary: (1) loan loss reserves were inadequate, and (2) despite assurances of stability, many of the problem assets were in the California and Florida real estate markets. Plaintiffs contend that an inference of fraudulent intent is warranted because: (1) financial analysts expected GlenFed to have operating income, rather than the loss attributable to the increased loan loss reserves, (2) the Florida economy had been in decline for many years and this was known to Defendants, (3) other thrifts reported increases in non-performing assets as of June 30, 1990, whereas GlenFed did not, and (4) other thrifts took losses on real estate loans and operations at least a year earlier than GlenFed. *See* Complaint ¶ 97A at 68.

### C. Restructuring to Eliminate Subsidiaries

GlenFed operated three subsidiaries[1] which in March 1990 it decided to divest. According to Plaintiffs, GlenFed announced

---

1. GlenFed Development Corporation (GDC), involved in commercial real estate development and investment, and GlenFed Capital Corporation (GCC) and GlenFed Financial Corporation (GFC), both involved in commercial lending backed by accounts receivable, inventory and fixed assets.

that it had adopted a plan to discontinue operations with no aggregate net loss. Complaint ¶ 37 at 35. In order to obtain discontinued operations accounting treatment (and defer reporting losses on the subsidiaries), GlenFed was required to represent to its outside auditors that it intended to sell the three subsidiaries. According to Plaintiffs, Defendants knew that this was completely infeasible given the declining real estate economy and the non-performing assets held by the subsidiaries. A strategic plan presented at a September 25, 1990 GlenFed board meeting indicated that the discontinued operations might have to be liquidated rather than sold, resulting in an after-tax loss of $17 million. The plan indicated that the sale of GDC was not a viable alternative in the current market and that no buyers were capable of purchasing the other two subsidiaries except at fire sale prices. Almost contemporaneously, however, minutes of board meetings discuss an expected total of "three to five" bids for GDC as of August 31, 1990, and the receipt of "about eight to ten bids" for the finance subsidiaries and three offers for GDC (all unsatisfactory) by September 25, 1990. Complaint ¶ 48 at 40–41.

Plaintiffs point to the September 30, 1990 Form 10–Q which indicated that no net loss was expected on disposition by sale. Relying on an internal position paper, Plaintiffs also allege that the senior management Defendants deliberately delayed the losses from these subsidiaries until December 31, 1990, when the plan to sell them was publicly acknowledged to be infeasible and "discontinued operations" accounting treatment was terminated.

### D. Stock Price Decline

Plaintiffs' real complaint is that the Defendants portrayed GlenFed as able to withstand the recession and systemic problems in the thrift industry when, in fact, "GlenFed was just another problem-plagued thrift riddled by systemic defects." Aplt. Brief at 8. According to Plaintiffs, the motive for this was to keep the stock price artificially inflated. "[A]s the truth about Glenfed's condition began to be revealed to the investing public, Glenfed's stock price plummeted from

$21.375 on August 25, 1988 at the beginning of the Class Period to $4.625 on January 16, 1991 at the close of the Class Period." Aplt. Brief at 17; Complaint ¶ 114 at 85.

### II. Application of Rule 9(b)

#### A. Section 10(b) and Rule 10b–5 Claims

A complaint under § 10(b) and Rule 10b–5 requires an allegation of scienter, that a defendant acted with intent to deceive, manipulate or defraud. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). The necessary scienter may be satisfied by actual knowledge or by a heightened standard of recklessness involving an extreme departure from ordinary care. *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1569–70 (9th Cir.1990) (en banc), *cert. denied*, 499 U.S. 976, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991). Allegations of negligence are insufficient. *Ernst*, 425 U.S. at 201, 96 S.Ct. at 1385. Rule 10b–5 complaints must satisfy Fed.R.Civ.P. 9(b) which requires that fraud be pleaded with particularity.

We review a Rule 9(b) dismissal of a complaint de novo. *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987). Although Fed.R.Civ.P. 8(a) only requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b) applies to securities fraud claims and serves to provide defendants with adequate notice of both the nature and grounds of the claim, to protect defendants from the reputational harm associated with fraud claims, and to prevent the filing of claims merely to discover unknown wrongs. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985). Rule 9(b) also serves to deter suits pursued for their settlement value, rather than their merits. *Ross v. A.H. Robbins Co.*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Those alleging fraud in connection with securities are required to allege specific acts or omissions on which the claim is based. *Id.* Rule 9(b) requires

848

"times, dates, places or other details of [the] alleged fraudulent involvement" of the actors. *Semegen,* 780 F.2d at 731. This assures at least a colorable factual basis for proceeding with the lawsuit. Although Rule 9(b) allows scienter to be pleaded generally, courts have required that the facts pled provide a basis for a strong inference of fraudulent intent. *See O'Brien v. National Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991); *Ross,* 607 F.2d at 558.

Plaintiffs first contend that they have adequately pled actionable misstatements, placing great reliance on *Virginia Bankshares, Inc. v. Sandberg,* —— U.S. ——, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991). In *Virginia Bankshares,* a proxy solicitation for a merger described the price per share offered to minority stockholders as a "high" value and a "fair" price for the stock. The Court held that such statements could be materially false and misleading, when the plaintiff alleged that the directors recommended the merger solely because they wanted to retain their seats on the board. *Id.* at ——, 111 S.Ct. at 2759. The Court reasoned that such statements are factual as opinions genuinely held or as expressions about the subject matter at hand. *Id.* at ——, 111 S.Ct. at 2758. "[S]uch conclusory terms in a commercial context are reasonably understood to rest on a factual basis that justifies them as accurate, the absence of which renders them misleading." *Id.*

Relying on *Virginia Bankshares,* the Third Circuit in *Shapiro v. UJB Financial Corp.,* 964 F.2d 272 (3rd Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992), held that statements characterizing loan loss reserves as "adequate," describing the loan portfolio as "well collateralized" and of high "quality," and praising internal controls as properly centralized, supervised, and managed, could state a claim. *Id.* at 283. "By addressing the quality of a particular management practice, a defendant declares the subject of its representation to be material to the reasonable shareholder, and thus is bound to speak truthfully." *Id.* at 282. Also relying on *Virginia Bankshares,* the Sixth Circuit in *Mayer v. Mylod,* 988 F.2d 635 (6th Cir.1993), held

that statements characterizing the loan portfolio as "soundly underwritten," a stock buyback as a "good investment" were actionable along with allegations of misrepresentation concerning non-performing assets and inadequate loan loss reserves. *Id.* at 636–40.

Neither *Virginia Bankshares* nor *Mayer* addressed compliance with Fed. R.Civ.P. 9(b). *Shapiro* addressed compliance with Rule 9(b) and remanded to the district court to allow the plaintiffs to meet this requirement. *Id.,* 964 F.2d at 284–85. Plaintiffs correctly assert that they are not required to plead evidentiary matters which may be in control of the Defendants. *See Id.* at 285. They must explain their theory of the fraud, though. *See Walling v. Beverly Enter.,* 476 F.2d 393, 397 (9th Cir.1973). At the pleading stage without the benefit of discovery, the facts may be largely in the exclusive possession of Defendants, so Rule 9(b) may be satisfied by pleading facts on information and belief, identifying the facts on which the belief is founded. *Shapiro,* 964 F.2d at 285.

Plaintiffs have had access to discovery materials obtained in a derivative action, so it cannot be said that all facts are in the exclusive control of the Defendants. Despite Plaintiffs' repeated efforts to plead facts, as well as facts thought to be so on information and belief, the facts alleged simply do not support an inference of fraud, notwithstanding that the material allegations of the complaint must be taken as true. *See Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989) (complaint may not be dismissed "based on a judge's disbelief of a complaint's factual allegations"). Here, nothing links these Defendants with knowledge or reckless disregard of facts indicating that lending practices were unsound, asset review procedures were inadequate, loan loss reserves were inadequate or that restructuring to dispose of the subsidiaries was a ruse. *See SEC v. Seaboard Corp.,* 677 F.2d 1315, 1316 (9th Cir.1982); *DiLeo v. Ernst & Young,* 901 F.2d 624, 629 (7th Cir.), *cert. denied,* 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990). Many of the facts plainly deal with what Plaintiffs perceive as faulty management practices, such as weak internal

controls. Fiduciary misconduct or internal mismanagement of a corporation is an area traditionally left to state law, not federal securities law. *Santa Fe Indus., Inc. v. Green,* 430 U.S. 462, 478–79, 97 S.Ct. 1292, 1303–04, 51 L.Ed.2d 480 (1977).

Plaintiffs cast the issue as whether favorable descriptions of operating policies ("strict" credit underwriting and monitoring policies), financial estimates ("conservative" loan loss reserves), and forecasting (expected sale of subsidiaries without a loss), constitute actionable misstatements. The real inquiry, however, must be whether the facts in the amended complaint would give rise to an inference that the Defendants either did not believe the statements or knew that the statements were false. Plaintiffs' complaint is largely an extended comparison between SEC filings and press releases and routine internal correspondence about GlenFed's problems and proposed corrective action (management's normal function). By virtue of reliance on public information, Plaintiffs are able to plead the time, place, content, and sometimes a specific author of the alleged misrepresentation, but they have not pled sufficient facts warranting an inference of securities fraud. *See Ferber v. Travelers Corp.,* 802 F.Supp. 698, 715–16 (D.Conn. 1992); *Steiner v. Shawmut Nat'l Corp.,* 766 F.Supp. 1236, 1246–47 (D.Conn.1991). At best, the allegations reflect the benefit of hindsight and perhaps corporate mismanagement or negligence. *See Denny v. Barber,* 576 F.2d 465, 470 (2d Cir.1978). For example, the failure to have current appraisals on some properties does not support the inference that the Defendants fraudulently stated that the asset monitoring procedures (as a whole) were adequate. The fact that some of the Defendants were aware of the general state of the economy in Florida, yet still indicated that certain markets in Florida were viable, does not suggest fraud. A failure to predict the future is not actionable. *See Shapiro,* 964 F.2d at 283. *See also In re Lyondell Petrochem. Co. Sec. Litig.,* 984 F.2d 1050, 1053 (9th Cir.1993). Likewise, the claim that GlenFed should have drastically increased loan loss reserves six months earlier, by itself, does not speak to fraud; rather it is a dispute about when the Defendants

should have recognized the loss based on the probability of uncollectibility. *See DiLeo,* 901 F.2d at 627 ("No matter when a bank [writes off or writes down a loan], someone may say that it should have acted sooner"). *See also* Complaint ¶ 120 at 88–89.

### B. Secondary Liability and Civil Conspiracy Claims

In the absence of an adequately pled primary violation, we need not address whether certain statements in question would be attributed to all of the Defendants as "group published information." *See Blake v. Dierdorff,* 856 F.2d 1365, 1369 (9th Cir.1988); *Wool,* 818 F.2d at 1440. Nor do we address liability premised on aiding and abetting, control person status or civil conspiracy. *See Steiner,* 766 F.Supp. at 1247.

### C. Sections 11 and 12 Claims

Under § 11 of the 1933 Act, a person who acquires a security issued pursuant to a false and misleading registration statement may sue for damages. 15 U.S.C. § 77k(a). Under § 12(2) of the 1933 Act, a person who offers or sells securities by a prospectus or oral communication that contains misrepresentations or omissions of material facts is liable to the purchaser. 15 U.S.C. § 77*l*(2). Plaintiffs who purchased GlenFed common stock through GlenFed's Dividend Reinvestment Plan claim against all Defendants pursuant to § 11, and only against GlenFed as to § 12. The shares covered by the Plan were registered with the SEC, and the prospectuses in the various registration statements incorporated by reference the SEC filings (Forms 10–K and 10–Q) discussed in the amended complaint. *See* Complaint ¶ 143 at 107. The district court dismissed these claims for failing to allege the specific offending statements in the registration statements.

Plaintiffs correctly contend that they have set out particular statements or omissions in documents (various SEC filings) which were incorporated by reference into the registration statements. *See Wielgos v. Commonwealth Edison Co.,* 892 F.2d 509, 512 (7th Cir.1989). The district court's dismissal on this ground was erroneous because the particular registration statements and alleged misrepresentations were described in the

amended complaint, thus distinguishing this case from *Bresson v. Thomson McKinnon Sec., Inc.,* 641 F.Supp. 338, 342 (S.D.N.Y. 1986) and *In re Consumers Power Co. Sec. Litig.,* 105 F.R.D. 583, 599 (E.D.Mich.1985).

██ Plaintiffs also correctly point out that §§ 11 and 12 do not require scienter, and that liability may be imposed for innocent or negligent material misstatements or omissions. *Herman & MacLean v. Huddleston,* 459 U.S. 375, 382, 103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983) (§ 11); *Shapiro,* 964 F.2d at 288 (§ 12(2)). However, when § 11 and § 12 claims are grounded in allegations of fraud, as they plainly are in this case, the allegations must meet the requirements of Rule 9(b). *Shapiro,* 964 F.2d at 288. It is far from obvious which allegations could be recast to sound in negligence given that the complaint sounds in fraud, and we may not recast the complaint to avoid Rule 9(b). *Id.* For the reasons stated above, the §§ 11 and 12 claims were properly dismissed for failure to comply with Rule 9(b).

## IV. State Law Claims

The district court determined that all of the common law claims, like the federal claims, should be dismissed for noncompliance with Rule 9(b), *see Semegen,* 780 F.2d at 734–35, and for not alleging actual and justifiable reliance as required by *Mirkin v. Wasserman,* 12 Cal.App. 4th 927, 953, 278 Cal.Rptr. 729, 746 (1991) (rejecting "fraud on the market" presumption as a substitute for actual reliance), *affirmed,* 5 Cal. 4th 1082, 23 Cal.Rptr.2d 101, 858 P.2d 568 (1993). The district court properly followed *Mirkin,* but given our holding concerning the complaint's failure to satisfy Rule 9(b), we affirm the dismissal of the state law claims on that ground.

**AFFIRMED.**

## ORDER

Feb. 25, 1994.

Before: WALLACE, Chief Judge.

Upon the vote of a majority of nonrecused regular active judges of this court, it is or-

dered that this case be reheard by the en banc court pursuant to Circuit Rule 35–3.