[NOT FOR PUBLICATION]

United States Court of Appeals
For the First Circuit


No. 96-2331

LOUIS GIULIANO & PATRICIA LETT, ETC., ET AL.,

Plaintiffs - Appellants,

v.

NATIONS TITLE, INC., ET AL.,

Defendants - Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge] 



Before

Boudin, Circuit Judge, 

Coffin, Senior Circuit Judge, 

and Dowd, Jr.,* Senior District Judge. 



Stephen C. Maloney for appellants. 
John H. Henn, with whom Stephen B. Deutsch and Foley, Hoag & 
Eliot were on brief for appellees. 



JANUARY 23, 1998


 

* Of the Northern District of Ohio, sitting by designation.

DOWD, Senior District Judge. This dispute concerns DOWD, Senior District Judge. 

questions of title to a number of lots in a real estate

subdivision located on Martha's Vineyard. Plaintiffs are the

developers of the subdivision, and Defendant is the title

insurance company which, under a predecessor name, issued title

insurance policies on these lots. As the result of many adverse

claims against these lots, Defendant decided to try to obtain

title to all the lots, and then work to preserve the subdivision

as an entity. Toward this end, Defendant and Plaintiffs entered

into several written agreements concerning the transfer of title

from Plaintiffs to Defendant. It is the enforceability of these

various agreements that is at the heart of this action. 

Plaintiffs filed this action alleging that Defendant had breached

a 1990 agreement to develop the property, and had otherwise

committed fraud, negligence, breach of fiduciary duty, and a

violation of Mass. Gen. Laws ch. 93A for unfair business

practices. Defendant responded with a counterclaim for a

declaratory judgment that a 1991 agreement between the parties

was valid, enforceable and settled all disputes between the

parties. The district court granted summary judgment to

Defendant, holding that the 1990 agreement was an unenforceable

"agreement to agree," and that the 1991 agreement was a valid

agreement and settled the parties' disputes. 

Plaintiffs now appeal the district court's grant of

summary judgment to Defendant. Plaintiffs also appeal the

district court's subsequent denial of their proposed second

-2-

amended complaint on the ground that it was futile. For the

reasons set out below, we affirm the district court's holding

that based on the undisputed facts, Defendant was entitled to

judgment as a matter of law.

BACKGROUND BACKGROUND

Patricia Lett ("Lett") and Louis Giuliano ("Giuliano")

(collectively "Plaintiffs") are the developers of the "Vineyard

Acres II," a 148-unit subdivision located in Edgartown,

Massachusetts. Lett initially took title to the lots in her

individual capacity, but in 1983 all of Lett's title was conveyed

to Lett in her capacity as "trustee" of the "Vineyard Acres II

Realty Trust."1 Plaintiffs sold approximately 77 lots, and Lett

as trustee retained ownership of approximately 69 lots which she

then mortgaged to Old Colony Cooperative Bank ("Old Colony").

Nations Title Insurance-NY ("NTNY"), under the predecessor name

of "TRW," issued title insurance policies totaling approximately

$11 million to the buyers of these lots. 

Subsequently, NTNY's predecessor learned of numerous

adverse title claims affecting the subdivision, and was obliged

to defend against these actions as a result of issuing the title

policies noted above. In 1987, as a result of these adverse

claims, NTNY's predecessor brought suit in the United States

District Court for the District of Massachusetts ("The Fraud

Action") against Plaintiffs, alleging that Lett and Giuliano knew

 

1 This Court was unable to determine from the record whether
Lett was a beneficiary of the trust.

-3-

they did not have good title to the land, and fraudulently

induced NTNY's predecessor to issue title policies to the

purchasers of the land and the financial institutions which gave

them mortgages. Title U.S.A. Ins. Corp. of New York v. Lett, 

C.A. No. 87-701-WD (D. Mass.).

NTNY's predecessor then decided to try to obtain title

to all the lots, and then work to preserve the subdivision as an

entity. Toward this end, NTNY, under its predecessor name of

TRW, and Lett entered into an agreement on August 8, 1990 ("1990

Agreement"). This 1990 Agreement sketched out an understanding

that had been reached by the parties with regard to TRW's plan to

acquire the lots that Old Colony was preparing to sell at a

foreclosure sale. The preamble of the 1990 Agreement states that

"for good and valuable consideration as described below, [the

parties] enter into this agreement to work cooperatively in a

project involving the continuation of the development, marketing

and sale of the Vineyard Acres II subdivision." The agreement

goes on to state that:

All Parties agree to use their best and
reasonable efforts to acquire for the benefit
of all Parties that portion of Vineyard Acres
II encumbered by a mortgage held by Bank of
New England-Old Colony on which said bank
intends to foreclose. TRW agrees that if it
acquires said portion pursuant to the
foreclosure sale, it will hold said portion
for the benefit of all Parties in an effort
to work cooperatively to accomplish the
Parties' objective of developing, marketing,
and selling the Vineyard Acres II
subdivision.
. . . . 
All Parties agree that their mutual
objective is to prepare and develop Vineyard

-4-

Acres II lots for sale, and to sell the same
without undue delay. The Parties agree to
use their best and reasonable efforts and to
act in good faith to achieve their objective.
The Parties agree to divide the proceeds of
the sale of Vineyard Acres II lots as
follows: a fixed amount to be agreed upon by
all Parties will be paid to TRW for expenses
incurred and proceeds exceeding that fixed
amount paid to TRW will be paid to Lett.

The parties signed the agreement, and NTNY's

predecessor was the successful bidder at the foreclosure sale.

Lett claims on appeal that because NTNY's predecessor agreed to

hold the property from the foreclosure sale "for the benefit of

all Parties," she has an interest in that property.

The parties continued negotiations to try to agree upon

the precise terms of an overall agreement which would include

settlement of the Fraud Action, which was still moving toward

trial. On March 21, 1991, the parties signed such an agreement

("1991 Agreement"). This 1991 Agreement was written in the form

of a letter from NTNY, under its predecessor name of TRW, to Lett

and Giuliano. The first paragraph states that it is "written to

memorialize and confirm the terms upon which you and TRW have

agreed to settle your disputes." Under this agreement, Giuliano

and Lett (as trustee)2 agreed to transfer various specified

interests within the Vineyard Acres II subdivision to NTNY's

predecessor in exchange for specified consideration, including

payment to Lett and Giuliano of $350,000. All pending litigation

 

2 Lett contends that she specifically crossed out the parts of
the agreement referring to Lett "individually," thus intending to
retain any lots which she held as an individual.

-5-

between the parties, including the Fraud Action, was to be

dismissed. Additionally, NTNY's predecessor agreed to use its

best efforts to develop, market, and sell the lots within the

subdivision. Further, the agreement stated that once the lots

were developed and sold, Lett and Giuliano would receive all

proceeds above NTNY's predecessor's "sunk costs." The items

which NTNY's predecessor could include and recover as these "sunk

costs" were specifically enumerated, and covered all aspects of

NTNY's predecessor's costs related to Vineyard Acres II. 

On the day the 1991 Agreement was signed, Lett and

Giuliano delivered the required deeds to NTNY's predecessor, and

NTNY's predecessor paid them $350,000 pursuant to the agreement.

The Fraud Action was dismissed shortly thereafter.

In 1994, Giuliano applied for a loan from NTNY. NTNY,

still uncertain about how the court system would evaluate the

1990 agreement, required Lett to execute, as part of this loan

transaction, an "Assignment, Agreement and Release" in which Lett

released any claims she may have had against "Nations Title

Insurance Company." As printed, the document released Lett's

claims against "Nations Title Insurance Company, of Overland

Park, Kansas." NTNY has always contended, however, that all

parties intended this to be NTNY (Nations Title Insurance-NY),

which was the company making the 1994 loan and taking back a note

and mortgage. In fact, there are the handwritten words "of New

York Inc. and family" added after the printed name of the

insurance company on this 1994 deed, but Lett contends that when

-6-

she signed the release, such words had not been added. In this

document, Lett also assigned "any and all right, title and

interest that she has or may have had in any and all lands in the

Town of Edgartown, County of Dukes, Commonwealth of

Massachusetts, to said Louis Giuliano." Lett contends this was

done so that it would be easier for Giuliano alone to work with

NTNY on developing the property. On December 19, 1994, following

the execution of this agreement, NTNY loaned Giuliano $165,000,

taking back a note and mortgage for unrelated property owned by

Giuliano located in Rhode Island.

Plaintiffs subsequently brought this action for, among

other things, fraud and violation of Mass. Gen. Laws ("G.L.") ch.

93A, for unlawful business practices. The heart of Plaintiffs'

argument was their claim that the 1990 agreement was an

enforceable agreement which gave Lett, in her individual

capacity, an interest in the Vineyard II property. NTNY

counterclaimed and moved for summary judgment, claiming that the

1990 agreement was an unenforceable "agreement to agree," and

that the 1991 agreement settled all claims between the parties

because Lett transferred all title in the property to NTNY's

predecessor. Plaintiffs, however, contend that while in the 1991

agreement Lett transferred the interest she held as a trustee,

she did not transfer the property she held as an individual

through the 1990 agreement. Plaintiffs also claimed that due to

the language of the 1994 agreement, Lett released only her claims

against "Nations Title Insurance Company," which is not the name

-7-

of any party to this lawsuit, and that Lett did not release her

claims against NTNY. Further, Lett claims that in this 1994

documrty to Giuliano, which was her individual interest in the

property acquired from the 1990 agreement, thus leaving Giuliano

now free to pursue claims against NTNY.

The district court granted NTNY's motion for summary

judgment. The court held that the 1990 letter is an

unenforceable "agreement to agree." The court then held, as an

alternative ruling, that Lett had given up any rights she

obtained under that 1990 agreement by signing the 1994 release.

The court then declared the 1991 settlement agreement to be valid

and enforceable. Finally, the court gave Plaintiffs leave to

file an amended complaint setting forth their fraud claim with

particularity. The court also gave Plaintiffs leave to reassert

their 93A claim if they were able to meet the jurisdictional

prerequisites of such claim.

Following this grant of summary judgment, Plaintiffs

submitted a Proposed Second Amended Complaint. The district

court denied Plaintiffs' motion to amend as futile. This appeal

followed.

CONTRACT INTERPRETATION CONTRACT INTERPRETATION

This case initially requires the analysis of the three

agreements involved in this matter, and the determination of

their enforceability: (1) the 1990 agreement between NTNY (under

its predecessor name of TRW) and Lett, which provides the basis

for Plaintiffs' claim that Lett held an interest in the property

-8-

as an individual, and which NTNY claims is unenforceable; (2) the

1991 agreement between NTNY (under its predecessor name of TRW)

and Plaintiffs, which NTNY claims settles all claims between the

parties, and which Plaintiffs claim is unenforceable; and (3) the

1994 assignment and release, which Plaintiffs claim assigned to

Giuliano all of Lett's rights and title with regard to the

property she claimed as an individual through the 1990 agreement.

1. Standard of Review 1. Standard of Review

We review the district court's grant of summary

judgment "de novo," drawing reasonable inferences in favor of the

nonmovant. Garita Hotel Ltd. Partnership v. Ponce Federal Bank, 

122 F.3d 88 (1st Cir. 1997). An inference is "reasonable" on de

novo review only if it can be drawn from the evidence without

resort to speculation. Hidalgo v. Overseas Condado Ins. 

Agencies, Inc., 120 F.3d 328 (1st Cir. 1997). The district 

court's grant of summary judgment is appropriate when "the

pleadings, depositions, answers to interrogatories, and

admissions on file, together with affidavits, if any, show that

there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."

Hidalgo, supra, at 332. An appellate panel is not restricted to 

the district court's reasoning but can affirm a summary judgment

on any independently sufficient ground." Mesnick v. General 

Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991).  

2. Enforceability of the 1990 Agreement 2. Enforceability of the 1990 Agreement

-9-

Under Massachusetts law, an "agreement to reach an

agreement is a contradiction in terms and imposes no obligation

on the parties thereto." Rosenfield v. U.S. Trust Co., 290 Mass. 

210, 195 N.E. 323 (1935). "A purported contract which is no more

than an agreement to agree in the future on essential terms, or

one which does not adequately specify essential terms, ordinarily

will be unenforceable." Air Technology Corp. v. General Elec. 

Co., 347 Mass. 613, 626, 199 N.E.2d 538, 548 (1964). 

In determining whether an agreement is an unenforceable

"agreement to agree" or an enforceable contract, the key issue

for the court is "whether the parties intended to be bound when

they signed the contract and, if so, whether the initial

agreement included all of the essential terms." Rand-Whitney 

Packaging Corp. v. Robertson Group, Inc., 651 F. Supp. 520, 535 

(D. Mass. 1986). Accordingly, a letter of intent may be binding

or nonbinding, depending on the intentions of the parties. Id. 

Further, the fact that a further agreement is contemplated does

not defeat a finding that the original agreement was a binding

contract, so long as the essential terms are agreed upon at the

start. Id. The essential terms must be set forth "with 

sufficient definiteness and clarity that a court, by

interpretation with the aid of existing and contemplated

circumstances, may enforce it." George W. Wilcox, Inc. v. Shell 

Eastern Petroleum Products, 283 Mass. 383, 388, 186 N.E. 562, 564 

(1933).

-10-

A review of the 1990 Agreement in the instant case

reveals that the district court was correct in its holding that

this agreement was an unenforceable "agreement to agree." The

agreement indicates no intention by the parties to be bound to

particular terms; rather, the letter commits the parties only to

working "cooperatively in a project involving the continuation of

the development, marketing and sale of the Vineyard Acres II

subdivision." The language used includes terms such as "best and

reasonable efforts" and "reasonable amounts," and other such

generalities, but contains no specific figures, deadlines or

actions to be taken by either party. This lack of duties and

responsibilities assigned to either party makes this "Letter

Agreement" unenforceable because it gives the court no guidelines

which it could apply to enforce the contract. See George W. 

Wilcox, supra (valid contract must set out essential terms with 

sufficient definiteness and clarity so court can interpret and

enforce it). Further, the parties' failure to include either the

exact amount NTNY would retain from the lot sale proceeds, or the

formula for its calculation renders this contract invalid.3

Plaintiffs argue that under the case of Hastings 

Associates, Inc. v. Local 369 Bldg. Fund, Inc., 42 Mass. App. Ct. 
 

3 The 1990 Agreement provides:

The Parties agree to divide the proceeds
of the sale of Vineyard Acres II lots as
follows: a fixed amount to be agreed
upon by all Parties will be paid to TRW
for expenses incurred and proceeds
exceeding that fixed amount paid to TRW
will be paid to Lett.

-11-

162, 675 N.E.2d 403 (1997), the fact that the parties agreed that

NTNY's predecessor would subsequently receive "a fixed amount to

be agreed upon" is sufficiently definite to constitute an

enforceable contract. However, an analysis of the Hastings case 

shows that it is easily distinguished, and that the vague

discussion of the payment amount in the 1990 Agreement supports a

finding of indefiniteness.

In Hastings, a Massachusetts appeals court held that a 

lease renewal provision was enforceable where it left open a

payment term but provided that if the parties could not agree,

then they were to select a third party to determine the amount.

The appeals court there held that this provision was enforceable,

and not merely an "agreement to agree" because the language

clearly demonstrated that the only thing that was left open was

the identity of a third party to solve any potential dispute that

should arise. Id. at 409-10. This did not render the agreement 

indefinite due to the parties' otherwise clear intention to be

bound, and the "commonly employed practices . . . for selecting a

neutral third party to determine value." Id. at 410.  

We find Plaintiffs' reliance on Hastings in this matter 

misplaced. While the contract in Hastings provided for a 

resolution in case the parties themselves could not agree on the

formula to use, the 1990 Agreement involved here did no such

thing. Rather, the 1990 Agreement merely stated that the parties

would discuss and agree upon the formula at a later date. This

vague language gives a court no way to interpret and enforce the

-12-

intent of the parties, and thus is an unenforceable contract.

See Saxon Theatre Corp. v. Sage, 347 Mass. 662, 666, 200 N.E.2d 

244 (1964) (finding unenforceable a letter agreement providing

that the "basic plans and specifications" of a proposed building

were "to be mutually agreed upon").

In light of the fact that this agreement has left out

an essential term, and gives the court no way to enforce the

rights and duties of the parties, we affirm the holding of the

district court that the 1990 Agreement is an unenforceable

"agreement to agree." 

3. The 1994 Release 3. The 1994 Release

Plaintiffs claim that by this document, Lett assigned

to Giuliano all the interest in the Vineyard II property that she

held as an individual as a result of the 1990 Agreement. This

1994 document also contained a release of Lett's claims against

"Nations Title Insurance Company." Plaintiffs claim this did not

release Lett's claims against Defendant NTNY (Nations Title

Insurance-New York) and so Giuliano is still free to pursue those

claims as Lett's assignee. NTNY, on the other hand, claims that

it was the clear intent of the parties for Lett to release her

claims against NTNY in this agreement, and that despite any

assertion to the contrary, the name used in the document

unambiguously refers to NTNY.

While the district court made an alternative ruling

that the 1994 release was valid, we do not reach this issue due

to our above holding that the 1990 Agreement is an unenforceable

-13-

agreement to agree. The only interest Lett claims she

transferred to Giuliano in this 1994 agreement was the interest

she claims from the 1990 Agreement. Because we have held that

this 1990 Agreement is unenforceable, Lett cannot claim any

interest through it.4 

4. The 1991 Agreement 4. The 1991 Agreement

Plaintiffs argue that there are three inferences that

must be made in their favor which preclude affirmation of the

grant of summary judgment on the issue of the 1991 Agreement:

(a) the 1991 Agreement was not signed by
Christopher Likens, the Vice President of
NTNY's predecessor, on or about March 21,
1991; and he was unable to produce an
original or copy with his signature on it
until after the lawsuit commenced;

(b) Lett signed the 1991 Agreement solely as
trustee because she intended in that
transaction to convey only her interest as
trustee in some mortgages on 32 lots on the
Property, and not the interests she had
acquired personally in the lots covered by
the 1990 Agreement; and

(c) Likens told Giuliano that Likens had
never signed the 1991 Agreement, had
destroyed it, and never considered it an
operative agreement.

We hold that even when taking the inferences as true, Plaintiffs

still fail to raise any genuine issues of material fact that

would preclude summary judgment. 

 

4 While there may have been an issue of fact as to whether an
ambiguity existed concerning the party which was released by the
1994 document, it is not relevant to this legal analysis since
our holding about the 1990 Agreement extinguishes any interest or
claim that Lett released in this document.

-14- 14

The first assertion, that Likens failed to sign the

agreement on behalf of NTNY's predecessor, is irrelevant. To be

enforceable, a contract need only contain the signature of the

party against whom it is to be enforced. Forman v. Gadouas, 247 

Mass. 207, 213 (1924) (contract need not be signed by party

seeking enforcement). Plaintiffs do not contest that they

themselves signed the 1991 agreement. Therefore, even if Likens

never signed the 1991 Agreement on behalf of NTNY's predecessor,

it is still valid and enforceable against Plaintiffs since they

do not contest that they signed it.

The second assertion, that Plaintiff Lett signed the

1991 Agreement only as a trustee, creates no genuine issue of

material fact. Even assuming that this is true, and that by the

1991 Agreement Lett retained the interest in the land she held in

her individual capacity, our earlier ruling concerning the 1990

Agreement makes this point moot. The only interest that Lett

claims to hold as an individual is that which she claims to have

received through the 1990 Agreement. However, because we have

held that the 1990 Agreement is unenforceable, Lett can claim no

interest as an individual. Therefore, at the time of the 1991

Agreement, the only interest Lett held was as a trustee, which is

the capacity in which she signed the 1991 Agreement, and

transferred all title to NTNY's predecessor.

Plaintiffs' third assertion, that Likens told Giuliano

he never signed the 1991 agreement, had destroyed it, and never

considered it an operative agreement, is also immaterial to our

-15- 15

review. Even if taken as true, these assertions do not show that

the contract was improperly executed or was otherwise invalid.

Furthermore, after signing, substantial performance took place:

Lett and Giuliano transferred deeds to NTNY's predecessor as

required under the contract, NTNY's predecessor paid the

$350,000, and the pending Fraud Action was dismissed. I n

conclusion, Plaintiffs have presented no evidence of a genuine

issue of material fact supporting their position that the 1991

agreement was invalid. Therefore, we affirm the district court,

and hold that the 1991 agreement was valid.

THE PROPOSED SECOND AMENDED COMPLAINT THE PROPOSED SECOND AMENDED COMPLAINT

Plaintiffs next argue that the district court erred in

denying their motion to file their proposed second amended

complaint as futile. Plaintiffs argue that their amended fraud

count meets the particularity requirements of Fed. R. Civ. P.

9(b), and that their other amendments state viable claims as

well.5
 

5 The proposed amendments are as follows:

The Amended Fraud Claim
(1) "Defendants falsely and fraudulently,
and with intent to defraud the Plaintiffs,
represented to the Plaintiffs that they would
hold the subject property in trust and
develop it for all parties [sic] benefit."
Proposed Second Amended Complaint, 95 (A at
398).

(2) "The defendants falsely and
fraudulently, and with intent to defraud the
Plaintiffs, represented to the Plaintiffs
that the March 21, 1991 Agreement related
solely to the 39 Bay Court Lots and that the
Agreement related to Patricia Lett as Trustee

-16- 16

1. Standard of Review 1. Standard of Review

The 1st Circuit holds that although motions to amend

are liberally granted, a court may deny them if it believes that,

as a matter of law, amendment would be futile. Demars v. General 

Dynamics Corp., 779 F.2d 95, 99 (1st Cir. 1985) (quoting Tiernan 

v. Blyth, Eastman, Dillon & Co., 719 F.2d 1, 4 (1st Cir. 1983). 

2. The Amended Fraud Claim  2. The Amended Fraud Claim 

Under Fed. R. Civ. P. 9(b), when alleging fraud, the

complaint must set forth "specific facts that make it reasonable

to believe that defendant[s] knew that a statement was materially

false or misleading." Serabian v. Amoskeag Bank Shares, Inc., 24 
 

and further that the Agreement had been
destroyed." Proposed Second Amended
Complaint, 99 (A at 399).

(3) "The defendants falsely and
fraudulently, and with intent to defraud the
Plaintiffs, represented to the Plaintiffs
that they would loan 1.6 million dollars to
plaintiffs in order to induce plaintiffs into
pledging the Vineyard property as collateral
on a loan and by further inducing plaintiffs
to execute the 1994 Assignment, Agreement and
Release." Proposed Second Amended Complaint,
103 (A at 399-400).

The New Breach of Contract Claim
(1) "Plaintiffs fully performed their
obligations under the terms of the March 21,
1991 Agreement, but the Defendants have
failed to perform its obligation under
paragraphs 1, 3, 6, and 7 of said agreement,
thereby constituting a breach of contract."
(A at 400, 108).

The New Claim for Violation of G.L. ch. 93A 9 and 11
(1) "The above described acts and practices
constitute a violation of the Massachusetts
Consumer Protection Statute, M.G.L. Chapter
93A, 9 and 11." (A at 401, 111).

-17- 17

F.3d 357, 361 (1st Cir. 1994) (quoting Greenstone v. Cambex 

Corp., 975 F.2d 22, 25 (1st Cir. 1992)). The rule requires that 

the particular "'times, dates, places or other details of [the]

alleged fraudulent involvement'" of the actors be alleged.

Serabian, supra, at 361 (quoting In re GlenFed, Inc. Securities 

Litigation, 11 F.3d 843, 847-48 (9th Cir. 1993), reh'g en banc 

granted, 11 F.3d 843 (9th Cir. 1994)). 

The amended fraud claim in this case failed to meet

the requirement of Rule 9(b) because in none of the three

allegations of fraudulent statements by Defendants' predecessor

did Plaintiffs identify specific conversations, the locations of

the conversations, or the details of the conversations. This

denial is additionally warranted in light of the fact that the

district court granted Plaintiffs leave to amend the fraud claim,

specifically directing Plaintiffs that the amended claim must

meet the specificity requirements of 9(b). 

3. The Amended Breach of Contract Claim 3. The Amended Breach of Contract Claim

We affirm the district court's denial of this amended

claim on the grounds that this amended allegation fails to state

a legal claim for relief. In this amended claim, Plaintiffs

allege that Defendant NTNY, under its predecessor name, breached

the enumerated paragraphs of the 1991 Agreement to use its "best

efforts" in securing the release of adverse claims to the

property and developing the property. However, this amended

claim alleges no instances where Defendant's predecessor failed

to use its "best efforts." Thus, the claim, as amended, would

-18- 18

indeed be futile, and the district court properly denied it.

Further, we note that the district court did not give Plaintiffs

leave to amend this claim of their complaint. Therefore, we

affirm the denial of this untimely amendment.

4. The 93A Claim 4. The 93A Claim

The district court granted Plaintiffs leave to amend

their complaint with respect to this claim if Plaintiffs could

prove that a demand letter was sent. This demand letter is a

requirement to bring a 93A 9 claim. See G.L. ch. 93A 9(3); 

Slaney v. Westwood Auto, Inc., 366 Mass. 688, 704 (1975); 

Baldassari v. Public Finance Trust, 369 Mass. 33, 41 (1975) 

(service of demand letter must be alleged and proved). The

amended complaint fails to allege that such a letter was sent,

all prerequisites to a 93A 11 claim. This claim requires that

the alleged unfair or deceptive acts occurred "primarily and

substantially" within Massachusetts. See G.L. ch. 93A 11. 

Although the Proposed Second Amended Complaint provides some

details of additional conversations involving NTNY's predecessor,

these are alleged to have taken place in New Jersey, or in

telephone calls with Likens of NTNY's predecessor, whose office

was in Kansas. Thus, this supplementation does nothing to

counter Defendant's prior showing that the acts at issue occurred

primarily and substantially outside Massachusetts. It

additionally does nothing to show that the events of which

Plaintiffs complain occurred primarily and substantially within

-19- 19

Massachusetts. Therefore, this amended claim would be futile,

and the district court's denial of it was proper.

CONCLUSION CONCLUSION

For the reasons set forth above, the district court did

not err in its grant of summary judgment on the grounds that (1)

the 1990 Agreement was an unenforceable "agreement to agree," and

(2) the 1991 agreement was a valid contract. Further, the

district court's denial of Plaintiffs' proposed second amended

complaint as futile was proper given the fact that the complaint

failed to meet the specificity requirements required under 9(b)

and it otherwise failed to state a legal claim for relief. The

decision of the district court is AFFIRMED. AFFIRMED

-20- 20